# SUPREME COURT.

LEWIS CURTIS and R. M. BLATCHFORD, Trustees, &c., agt. DAVID LEAVITT, Receiver, &c.

DAVID LEAVITT, Receiver, &c., agt. R. M. BLATCHFORD and LEWIS CURTIS, Trustees, &c.

A judgment, directing the payment of money *out of a fund in court*, is not a judgment directing the payment of money within the statutes, as to a stay of execution on appeal.

Therefore, the appellant, in such a case, may give his undertaking for security for $250 only, under § 334 of the Code, which operates to stay execution.

*New-York General Term, March,* 1855.
MITCHELL, MORRIS, and CLERKE, Justices.

IN December, 1842, John J. Palmer, after these two suits were instituted, was appointed special receiver to take and hold, under the direction of the court, certain property, formerly of the North American Trust and Banking Company. The special receiver collected $1,100,000 and upwards, and deposited it in the New-York Life Insurance and Trust Company, and still has a large amount of property not yet converted into money. After a long controversy, a decree was made in both causes, sustaining the claims of creditors under the trust instruments executed by the company, and directing the special receiver, out of the proceeds of securities in his hands, to pay the costs, &c., of the parties in these actions, and afterwards to pay out of said securities to Palmers, M'Killop, Dent & Co., the amount due to them on 377 trust bonds, amounting, with interest, to more than a million of dollars, rateably with certain other creditors; and with directions also, out of the securities, to make other payments.

Vol. X.                                          31

Curtis and Blatchford, Trustees, &c., agt. Leavitt, Receiver, &c.

————— —————, *for trustees.*

———— ————, *for special receiver.*

By the court—MITCHELL, Justice. Mr. Leavitt is not a receiver appointed in these causes, but was appointed a receiver before these causes were instituted, on account of the insolvency of the company. He is not therefore bound (as Mr. Palmer, the special receiver in this cause, may be, when he is not interested, but) to obey orders made in this cause, in which he is a party, without appealing from them. Mr. Leavitt has the same right to appeal from any order made, as to the funds belonging formerly to the company, as any other party to the suit has to the extent of the interests which he represents. He has appealed from the decree of this court to the court of appeals, and has given security only in the sum of $250, and under § 334 of the Code. He next gave notice to the special receiver that he had so appealed, and that he forbade any payments being made under that decree. The counsel for Curtis, Blatchford, &c., trustees, and for Palmer, M'Killop, Dent & Co., and for others, gave notice to him that they insisted on payment under the decree, as they regarded the security as inadequate to operate as a stay of proceedings.

The special receiver applies for instructions. He is an officer of the court, as much so as the clerk of the court would be if he held the funds, and so is entitled to the instructions of the court, when the question is, what is his duty under the orders of the court—in other words, what do those orders mean under this state of facts?

Section 335 of the Code declares, that if an appeal be from a judgment directing the payment of money, it shall not stay the execution, unless an undertaking be executed on the part of the appellant, to the effect that if the judgment, or any part thereof, be affirmed, the appellant will pay the amount directed to be paid, or the part of such amount as to which the judgment shall be affirmed, and all damages which shall be awarded against him upon the appeal.

The appellant has not attempted to comply with the require-

ments of this section, and insists that it is inapplicable to his case ; that the judgment in this' case is not a judgment directing the payment of money ; and that, as it does not direct him to pay money, but that it be paid out of certain funds in the hands of the special receiver,—a section requiring an appellant to undertake that if the judgment should be affirmed, he would pay the amount directed to be paid and all damages, could not apply to one situated as he is.

The respondents insist. that the decree is for the payment of money, and so, within the literal terms of this section ; that a different construction would enable any one in a similar case, by a frivolous appeal, in which there were no grounds, to stay the execution of a decree ; and that if, before the Code, such a license were allowed under similar decrees, it was under the idea that then such a construction was necessary, or executors, administrators, trustees, and " *other persons* acting in another's right," could not stay execution in any case without such a bond ; but that now, under the Code, the court below may, in its discretion, dispense with any security from all that class of persons, or limit the amount of the security to be given. There is much in this argument of the respondents to deserve the serious consideration of the court, if the question has not been substantially passed upon already, in former cases in the court of chancery. But if that court has decided the point, it is most proper for us not to reconsider it, but leave a higher court to determine it, as both parties admit that our decision is appealable.

Section 334 of the Code is substantially like § 80 of 2 *R. S.* 605, as to appeals from the court of chancery to the court for the correction of errors ; and § 335 of the Code like § 82 of 2 *R. S.* 606. The Revised Statutes not having provided for the security to be given on appeal from the vice-chancellor to the chancellor so as to be a stay, the chancellor made the 116th rule of 1844, which is in effect the same as §§ 80, 82 of 2 *R. S.* 605, 606.

In *Quackenbush* agt. *Leonard*, (10 *Paige*, 131–7,) the chancellor held, that a decree in a suit for the redemption of a mortgage, directing the money on the mortgage to be paid, or that

the bill be dismissed, was not a decree for the payment of money, so as to require the plaintiff, on appealing from his decree to the court for the correction of errors, to give a bond for the payment of the money mentioned in the decree, because it was not a decree upon which an execution could be issued for that money. He also held, that (the mortgagee, the respondent, being in possession of the lands) the appellant was not bound to give a bond for the payment of rents, and against waste, under § 85 of 2 *R. S.* 606, which requires such bond to be given, if the decree directs the sale or delivery of the possession of any real property.

In *Wright* agt. *Miller*, (3 *Barb. Ch. R.* 382,) the decree of the vice-chancellor directed E. W. Miller to convey, to trustees to be appointed, part of certain trust property; and that, on the coming in and confirmation of the master's report, he should pay the amount which should be reported necessary to make good the trust estate. Miller appealed to the chancellor, but gave a bond only in $250, for costs and damages, and insisted that the master could not proceed on the reference; the vice-chancellor decided that the master should proceed. The chancellor held, that the decree was final; that as the new trustees were not appointed when the appeal was taken, and it could not then be known what would be the deficiency which Miller would be bound to reimburse, the bond given was sufficient to stay the proceedings in the court below: and that, except as to the costs to be paid by the defendant, "this was not a decree for the payment of money within the intent and meaning of the 82d section, (of 2 *R. S.* 606,) so as to make it necessary to give security to pay the amount decreed, before the coming in and confirmation of the master's report, showing that some money was to be paid; that it was not a decree directing the payment of money absolutely, and merely referring it to the master to compute the amount due; (*p.* 389;) but that the case would be different if the decree directed the payment of costs which had not been taxed, or of the amount due upon a bond and mortgage, which was a mere matter of computation, (*p.* 390,) as in *Coithe* agt. *Crane*, (1 *Barb. Ch. R.* 21.) The

chancellor acknowledged the imperfection of the Revised Statutes as thus interpreted; and that the necessary effect was, that appeals were often brought for the mere purpose of delay and vexation. (*p.* 390.)

Previous to these cases, the same question had arisen in the *City Bank* agt. *Bangs*, (4 *Paige*, 285.) That was an interpleader suit; and the amount in controversy was paid into court, and invested by the assistant register. The vice-chancellor awarded the whole fund to Bangs, and directed the other defendants to pay to him certain portions of the master's costs on the reference, and that execution issue for such costs. Two of these defendants appealed from this order, or decree, and gave bonds in $100 only, to pay costs and damages that might be awarded against them on the appeal; but they gave no security as to the amount in court, nor as to the costs. The chancellor held, that § 82 of 2 *R. S.* 606 " evidently was only intended to apply to those cases in which some of the parties in the cause were directed by the decree to pay money, or were *personally* charged with the payment of a loss which had arisen, or which might arise in relation to a fund in court;" and that the loss of interest on the fund might be covered by the bond given; but that new bonds should be given as security for payment of the costs awarded against the defendants personally.

Thus, there seems to have been a uniform course of decision on the equity side of this court, as to the construction of the similar clause in the Revised Statutes, since the year 1833 : and this court ought hardly to depart from that course, unless a manifest error had been committed, or there were no means of correcting our error by appeal.

The principle seems to be, that a judgment, directing the payment of money out of a fund in court, is not a judgment directing the payment of money within the statutes, as to stay of execution on appeal.

The appellants referred to § 285 of the Code, as illustrating § 335. Section 285 is, that when a judgment *requires the payment of money*, or the delivery of real or personal property, it

may be enforced by execution; and that when it requires the performance of any other act, a copy of the judgment may be served, and disobedience punished as a contempt. And it was argued with some force that the language of the two sections was similar, and that the performance of the decree in this case would not be enforced by execution, as a decree directing the payment of money by one personally would be; but by service of a copy of the judgment; and if so, this was not a decree directing the payment of money, but, according to § 285, a decree " requiring the performance of some other act."

Somewhat similar language occurs in § 129, which prescribes the notice to be in a summons: 1st, In an action on a contract for the *recovery of money*, only, that the plaintiff will take judgment for the sum specified in the summons: 2d. In *other* actions, the plaintiff will apply to the court for the relief demanded in the complaint. An action for money to be paid out of a fund would fall under the first class, not under the second. The same distinction is made in subdivisions 1 and 2 of § 246.

The instruction to the special receiver must be, not to pay any sums under the decree of this court, until the appeal shall be decided, or the further order of this court, or of the court of appeals. The special receiver and each of the parties appearing, will be allowed their costs of this motion, to be paid, on the appeal being disposed of, out of the funds in the hands of the special receiver.